UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL STAMPLEY,

    Plaintiff,

  v.

ALTOM TRANSPORT, INC.,

    Defendant.

No. 14 CV 3747

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff was a truck owner and operator who leased his vehicle and driving services to defendant, a motor-carrier company, in exchange for "70% of gross." From time to time, a customer who hired defendant would pay the company to have the truck's tank washed. Defendant did not count these received funds as part of "gross," but, in this lawsuit, plaintiff says it should have.

Plaintiff claims defendant's conduct constituted both a breach of contract and a violation of the federal Motor Carrier Act and its regulations. Defendant disagrees and says the tank-wash funds were simply reimbursements from customers and therefore not part of "gross." Defendant also brings a counterclaim against plaintiff in which it alleges that he owes the company money it overpaid him in error.

Two motions are currently pending. First, plaintiff has moved under Rule 23 to certify a class of truck drivers who were all allegedly deprived of tank-wash funds in this manner. Second, plaintiff has moved under Rule 56 for summary judgment on defendant's counterclaim. For the following reasons, the motion for summary

judgment is denied, and the motion for class certification is granted in part and denied in part.

I.  **Legal Standards**

A plaintiff seeking to certify a class under Rule 23 of the Federal Rules of Civil Procedure must show that his proposed class is "sufficiently definite [such] that its members are ascertainable." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 493 (7th Cir. 2012). Once that hurdle is cleared, the plaintiff must satisfy the four requirements of Rule 23(a)—commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). The plaintiff must also satisfy the requirements of at least one subsection of Rule 23(b). *Id.* Plaintiff seeks to certify a class under Rule 23(b)(3), so he must show that issues common to the class members predominate over questions affecting only individual members, and that a class action is superior to other available adjudication methods. Fed. R. Civ. P. 23(b)(3); *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

A putative class representative must "affirmatively demonstrate" compliance with Rule 23 through "evidentiary proof"—mere allegations are insufficient. *Comcast Corp. v. Behrend*, — U.S. —, 133 S.Ct. 1426, 1432 (2013); *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 675 (7th Cir. 2001). Compliance with each requirement must be shown by a preponderance of the evidence. *Messner*, 669 F.3d at 811. A class may be certified only if a district court is "satisfied, after a rigorous

analysis," that compliance with Rule 23 has been shown, even if the analysis entails some overlap with the merits. *Wal–Mart Stores, Inc. v. Dukes*, — U.S. —, 131 S.Ct. 2541, 2551 (2011); *see also Am. Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010).

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Background

Plaintiff Michael Stampley was an owner and operator of a moving truck. On September 28, 2012, he entered into an "Independent Contractor Agreement" with defendant Altom Transport, Inc.—a for-hire motor-carrier company.

The Motor Carrier Act and its implementing regulations govern the relationships of drivers and carriers such as plaintiff and defendant. *See* 49 U.S.C. § 14102; 49 C.F.R. § 376.1 *et seq*. Under these rules, a written lease agreement between a driver and carrier must include certain provisions, including as follows:

> **Compensation to be specified.** The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. . . . The amount to be paid may be expressed as a percentage

3

of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount.

49 C.F.R. § 376.12(d). This regulation also states that "[t]he required lease provisions shall be adhered to and performed by the authorized carrier." *Id*. § 376.12.

In this case, the agreement between plaintiff and defendant set forth plaintiff's compensation by reference to an attached copy of Illinois Commerce Commission Form EL-1. On the attached form, the parties indicated that plaintiff would receive: "70% [of]¹ gross." [37-6] at 25.

Plaintiff claims defendant hid certain charges it assessed customers, including a substantial fee some customers paid to have the truck's tank washed. Not only did defendant not tell the drivers about this money it received, plaintiff alleges, the company also wrongfully excluded the amount from the definition of "gross," resulting in the drivers losing out on their share. Plaintiff's complaint alleges that this conduct constituted both a breach of the parties' contract and a violation of 49 C.F.R. § 376.12.²

---

¹ ICC Form EL-1 appears to contain a typo. It reads: "Lessor shall be compensated as follows: $_____ per hour OR _____ % or gross and/or (other terms) _____." This line should almost certainly read "% *of* gross" instead. Neither party picked up on this error, and both act as if the form does say "of." I conclude this is a scrivener's error and I will apply the language as the parties assume it to be.

² Plaintiff also alleges an unjust enrichment claim but the parties have not materially addressed it.

4

Plaintiff's complaint also explains that defendant conducted itself in this same way with all its drivers—each of whom was compensated with a percentage of "gross." Plaintiff believes this dispute would be best addressed on an aggregate basis and has therefore moved for class certification under Federal Rule of Civil Procedure 23.

Seeing plaintiff's argument that he is owed precisely 70% of everything defendant received from customers, defendant has filed a claim seeking the return of all money it paid plaintiff in excess of 70%. In particular, defendant wants overpayments it made on funds it received from customers in connection with fuel surcharges. Defendant regularly paid drivers 90–100% of receipts of these funds.

Plaintiff has moved for summary judgment on this claim.

## III. Analysis

### A. Motion for Class Certification

#### 1. Ascertainability

A class may be certified only if its members can be ascertained. *See Mullins v. Direct Digital, LLC*, – F.3d –, 795 F.3d 654, 657 (7th Cir. 2015). A plaintiff must begin by offering a class definition that is precise, defined by objective criteria, and not defined in terms of success on the merits. *Id.* at 659–60. At the certification stage, a plaintiff need not prove that there is a reliable and administratively feasible way to identify all who fall within the class definition. *Id.* at 657–58.

Here, plaintiff seeks certification of a class he defines as follows:

All equipment owner-operators in the United States who, during the period from May 21, 2004, through the present, had or have owner-

> operator agreements that identify Altom Transport, Inc. as the carrier and hauled shipments pursuant to such agreements for which Altom collected payment for tank washes.

[71] at 3. Plaintiff's proposed class is ascertainable. The definition is precise, objectively based, and not premised on the merits. That is enough. *See Mullins*, 795 F.3d at 672.

Defendant says "the record is stale and incomplete" because, after plaintiff's motion to amend the class definition was taken under advisement, plaintiff did not amend his complaint or class certification motion. [88] at 8. But ultimate responsibility for defining the class falls to me, *Chapman v. First Index, Inc.*, 796 F.3d 783, 785 (7th Cir. 2015), and thus any failure by plaintiff to formally amend the pleadings was harmless (if required at all).

Defendant offers a handful of other arguments that ostensibly go to the issue of ascertainability, but none are persuasive or worth discussion. Plaintiff's definition articulates an ascertainable class.

### 2. Rule 23(a)

"All class actions, no matter what type, must meet the four explicit requirements of Federal Rule of Civil Procedure 23(a): (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation)." *Chicago Teachers Union, Local No. 1 v.*

*Board of Educ. of City of Chicago*, – F.3d –, 2015 WL 4667904, at *3–4 (7th Cir. Aug. 7, 2015).

### i. Numerosity

Rule 23(a)(1) requires that a class be so numerous joinder of all its members is impracticable. Defendant says determining the class size in this case is impossible because "the proposed class is not defined." For the reasons just discussed, this assertion is wrong.

Plaintiff offers defendant's computerized records as evidence that the class contains no fewer than 300 members. *See* [37] at 12 (citing [37-8]). This unrebutted evidence satisfies numerosity.

### ii. Commonality and Typicality

Rule 23(a)(2) requires the existence of at least one question of law or fact that is common to the class, while Rule 23(a)(3) requires the claims or defenses of the representative party to be typical of those of the class. These two elements have a tendency to merge. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Defendant first asserts—without citation to the record or authority—that the Independent Contract Agreements at issue were not the same for every driver. The only evidence on this issue, however, is that the form contracts were identical in material part. When asked at his deposition if all drivers were "governed by the same provisions" as the ones in plaintiff's specific agreement, defendant's corporate representative answered, "Yes." *See* [37-7] at 62:16–63:14. The only difference, the

7

witness explained, was the percentage of "gross" to which a given driver was entitled. *Id.*

Defendant argues that not all members of the putative class interpret the contract as plaintiff does. More specifically, not all drivers read the contract's term "gross" to include the tank-wash funds. Whether true or not as a factual matter, this point is irrelevant under both Illinois and Texas law.[3] "Where a contract is interpreted as a matter of law, the contracting parties' subjective intentions are irrelevant; rather, the pertinent inquiry focuses upon the objective manifestations of the parties, including the language they used in the contract." *Cox v. U.S. Fitness, LLC*, 2013 IL App (1st) 122442 ¶ 22 (quotation omitted); *Weaver v. Highlands Ins. Co.*, 4 S.W.3d 826, 831 (App. Tex. 1st Dist. 1999). The form contract defendant used with all its drivers can therefore be construed on a class-wide basis.

Defendant says "there is also the open question of which statute of limitations applies. Plaintiff has not established that there is uniformity in the application of the laws here." [88] at 14. Plaintiff responds that defendant has already admitted in its Answer that the limitations period on the federal claim is four years. [91] at 13. A litigant's admission to a question of law such as this has no effect, however. *See McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 682 (7th Cir. 2002).

Nevertheless, the limitation periods in this case are not in dispute. The federal claim has a four-year period. *Owner-Operator Independent Drivers Ass'n,*

---

[3] Defendant operates out of both Illinois and Texas. Some of its agreements with drivers (including plaintiff) are governed by Illinois law, while others are governed by Texas law.

8

*Inc. v. Mayflower Transit, LLC*, 615 F.3d 790, 792–93 (7th Cir. 2010). As do claims for breach of contract under Texas law. Tex. Civ. Prac. & Rem. Code § 16.051. While claims for breach of written contract under Illinois are viable for 10 years. 735 ILCS 5/13-206.[4]

While defendant has failed to show that typicality or commonality are lacking, plaintiff has affirmatively demonstrated that both are present. Concerning commonality, the claims of the would-be class "must depend upon a common contention that is capable of class-wide resolution." *Chicago Teachers*, 2015 WL 4667904 at *4 (citing *Dukes*, 131 S.Ct. at 2551). "In this context, class-wide resolution means that determining the truth or falsity of the common contention will resolve an issue that is central to the validity of each claim." *Id*.

The common question in this case is whether the tank-wash funds defendant received were a component of "gross," and therefore payable in part to the drivers. If the answer is "Yes," then many of the 300+ drivers named in defendant's business records were underpaid. If the answer is "No," then none of them were (at least not on this basis). In either case, the answer to this common question will be central to the validity of each class member's claim.

As for typicality, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing*

---

[4] To the extent defendant argues that the differences between the ten-year Texas period and the four-year federal/Illinois periods preclude certification, this issue is presently moot for reasons explained below.

9

*Co.*, 633 F.3d 574, 586 (7th Cir. 2011). The typicality requirement addresses the separate concerns that (1) the representative's claim may fail on unique grounds, dooming meritorious claims of absent class members; or (2) the representative's claims may prevail on unique grounds, and the representative may therefore fail to adequately present alternative grounds under which the unnamed class members could prevail on their own claims. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

As plaintiff has shown, his claim is typical of the claims of the class because all claims concern how defendant uniformly interpreted form agreements that were materially identical.[5]

### iii. Adequacy

The final requirement under Rule 23(a) is that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "[A]dequacy of representation is composed of two parts: the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quotation omitted).

Defendant contends plaintiff's deposition testimony reveals that he knows little about the case or the role of a class representative, and therefore would not be an adequate class representative. The Seventh Circuit has made clear that the bar for a named plaintiff's adequacy is not set high. *See Phillips v. Asset Acceptance,*

---

[5] There is a possible defense to plaintiff's specific claim, which could make his claim atypical. The parties briefed that issue as one of adequacy and it is discussed below.

*LLC*, 736 F.3d 1076, 1080 (7th Cir. 2013) ("To question her adequacy is to be unrealistic about the role of the class representative in a class action suit. The role is nominal."). Plaintiff's deposition testimony demonstrated a basic understanding of the claims in this case, as well as his willingness to participate in discovery. *See* [91] at 5. That is enough. Similarly, plaintiff's counsel's submissions show they are competent to prosecute this case. *See* [37] at 13 n. 9.

Defendant says plaintiff is inadequate because his complaint is "inherently flawed" in that his federal and state claims are inconsistent. This argument fails for a number of reasons, but, most basically, it fails because the Federal Rules of Civil Procedure explicitly allow litigants to plead inconsistent claims. *See* Fed. R. Civ. P. 8(d)(3).

Finally, defendant says plaintiff is not adequate because he failed to comply with the contract's requirement that he complain of his compensation-related issue within 30 days of payment. This contention is actually better thought of as a question of typicality. *See Phillips*, 736 F.3d at 1081. In other words, one must ask whether the presence of this possible defense to plaintiff's breach of contract claim makes his claims not typical of the claims of the class. This is a fair point. To the extent some class members did object to not receiving a cut of the tank-wash fee, they may be in a materially better legal position than plaintiff. (Though, the parties have not fully briefed this issue, and I do not rule on the provision's effect at this time.)

This hurdle may be overcome, however, through a tightening of the class definition. Plaintiff's proffered class is further narrowed to include only those drivers who did not object under the terms of the standard contract. For such a class, plaintiff is perfectly typical and will have every incentive to adequately represent the class's interests.

### 3. Rule 23(b)(3)

In addition to the requirements of Rule 23(a), a plaintiff seeking class certification must also satisfy one of Rule 23(b)'s three subsections. Here, plaintiff proceeds under subsection (3), which allows for certification upon a finding that "questions of law or fact common to members of the class predominate over any questions affecting only individual members," and also that "a class action is superior to other available methods for resolving the controversy." Fed. R. Civ. P. 23(b)(3).

#### i. *Predominance*

"There is no mathematical or mechanical test for evaluating predominance." *Messner*, 669 F.3d at 814. This "'inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy,' with the purpose being to determine whether a proposed class is 'sufficiently cohesive to warrant adjudication by representation.'" *Id.* (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). While similar to Rule 23(a)'s requirements for typicality and commonality, "the predominance criterion is far more demanding." *Amchem*, 521 U.S. at 623–24. "Rule 23(b)(3)'s predominance requirement is satisfied when

common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted). "Or, to put it another way, common questions can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class." *Id*. "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id*. (quotation omitted).

Defendant points to six questions it sees as requiring individualized answers that will predominate: "(1) what is the proper interpretation of each ICA; (2) was payment clearly stated on the ICA . . . (3) what was the understanding and expectation of each party to the contract; (4) was there a breach and damages; (5) what is the appropriate application of the statute to each ICA; and (6) what are the individual damages . . . ." [88] at 12.

These questions do not require individual answers that will predominate. As to (1) and (2), the evidence shows that the class members' agreements with defendant were materially the same. As such, both questions (1) and (2) can be answered on a class-wide basis.

As to (3), once again, the subjective understanding and expectation of each party is irrelevant under both Illinois and Texas law. What matters instead are the "objective manifestations of the parties, including the language they used in the

contract," *Cox*, 2013 IL App (1st) 122442 ¶ 22; *Weaver*, 4 S.W.3d at 831, which are materially the same for all class members.

Whether there was a breach (4) is the common question at issue in this case and will depend on whether or not "gross" included the tank-wash funds. And question (5) is likewise easy to answer on a class-wide basis: The appropriate application is to apply the statute as written to the agreements as written.

Although damages will have to be resolved on an individual basis, that hurdle is not reason alone to deny certification. *IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 602–04 (7th Cir. 2014); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013).

Defendant argues that plaintiff's federal claim fails as a matter of law because he admitted in his complaint and brief that the agreement clearly stated plaintiff's compensation was to be 70% of gross. Defendant misunderstands plaintiff's claim. The regulations at issue require a lease agreement to clearly state the amount a driver is to be paid, and it is a violation of the regulations for the agreement not to do so. But this language is not really the basis of plaintiff's claim, which instead is based on the regulation's requirement that: "The required lease provisions shall be adhered to and performed by the authorized carrier." 49 C.F.R. § 376.12. If the contract required a percentage of tank-wash revenue to be paid to the drivers then it was a violation of the federal regulation to not comply with the lease provision. Thus, plaintiff's federal and breach of contract claims are functionally equivalent and, as such, defendant is also wrong to say that

14

"[r]esolution of the individual state law breach of contract claims may likely predominate over a generalized construction and application of the [federal] regulations." [88] at 12.

In sum, questions of law common to members of the class predominate over any questions affecting only individual members. The proposed class is sufficiently cohesive to warrant adjudication by representation because each member's claim depends almost entirely on one legal question—were the funds defendants received for tank washes part of "gross?" This question represents a significant aspect of the case and can be resolved for all members of the class in a single adjudication.

Nevertheless, one evidentiary issue remains. This case is appropriate for class treatment only to the extent defendant behaved the same way toward each member of the class. Plaintiff has supplied evidence showing that defendant universally excluded tank-wash money from "gross," but this evidence only speaks to the period from June 15, 2010 to June 15, 2014. Plaintiff showed defendant's corporate representative business records spanning these dates and asked him, "were owner-operators paid 70 percent of the cleaning charges," to which the witness responded, "No." [37-7] at 30:21–23. This is enough to show defendant treated each driver the same way from June 15, 2010 and onward. While the witness's answer could possibly have been referring to conduct spanning the entire proposed class period (10 years), the context of the questioning and its focus on the specific business document leads me to conclude that the present record contains no evidence of defendant universally excluding tank-wash funds before June 15, 2010.

15

This matters because it is only by reason of such common conduct that common issues predominate. Without any such glue for the period from May 21, 2004 to June 14, 2010, individual trials would be required to determine if, for each class member, defendant excluded the money from "gross." In this way, this case differs from *Owner-Operator Independent Drivers Ass'n, Inc. v. Allied Van Lines, Inc.*, in which the alleged violation was the carrier's standard contractual language itself. 231 F.R.D. 280, 285 (N.D. Ill. 2005). Here, the alleged injurious conduct is not how the contract was written, but how it was performed by defendant.

Plaintiff may be able to resolve this issue down the line with additional proof, but, for the time being, this hole in plaintiff's evidence requires that the class definition be narrowed further.

*ii.    Superiority*

Defendant says a class action is not superior to individual actions because the amount each class member is allegedly owed is large enough to encourage them to bring cases on their own. It is certainly true that many of the members of the class would be entitled to large sums of money. For example, one driver named Bryant would be in a position to obtain 70% of $90,810, or $63,567, which is unquestionably enough motivation to sue. [37-8] at 2. At the same time, however, many members of the class would be in line to receive less than $2000. *See id*. 2–9. And it is far less clear that these drivers would pursue claims on their own (especially those entitled to less than $500). By my count, there are at least 80 of these lower-value

claimants, which makes a class action the superior device. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).

### 4. Certified Class

Plaintiff has made the showing required under Rules 23(a) and 23(b)(3) that class treatment is appropriate in this case. However, plaintiff has not made a showing sufficient to certify the precise class he requested. Instead, the following class is certified:

> All equipment owner-operators in the United States who, during the period from June 15, 2010 to the present, had or have owner-operator agreements that identify Altom Transport, Inc. as the carrier, hauled shipments pursuant to such agreements for which Altom collected payment for tank washes, and who did not object within 30 days of payment for such hauls to the exclusion of the tank-wash funds from "gross."

### B. Motion for Summary Judgment

Defendant has asserted a counterclaim that seeks to recover overpayments it made when it paid plaintiff 90–100% of fuel surcharges instead of the 70% arguably required by the parties' agreement. Plaintiff has moved for summary judgment on this claim, arguing that it is barred as a matter of law by the voluntary payment doctrine. "The doctrine, stated succinctly, maintains that absent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but under a mistake of law are not recoverable." *See Spivey v. Adaptive Marketing LLC*, 622 F.3d 816, 823 (7th Cir. 2010) (quotation omitted).

Defendant says the voluntary payment doctrine does not apply because plaintiff never asserted a "claim of right" to 90% or 100% of fuel surcharges. *See* [86] at 9. Illinois courts have required a claim of right to be present in order for the

17

doctrine to apply. *See, e.g., Jursich v. Arlington Heights Federal Savings and Loan Ass'n*, 110 Ill.App.3d 847, 850–51 (2d Dist. 1982) (distinguishing between unilateral unsolicited payments and payments made in response to a claim of right); *but see King v. First Capital Fin. Serv. Corp.*, 215 Ill.2d 1, 29–30 (2005) (suggesting that even if there is no claim of right, the doctrine may apply if "money [is] paid under a mistake of law"). Plaintiff says he has shown he made a claim of right because it is "undisputed that, throughout the multi-year class period, drivers submitted shipment paperwork for payment, and they received payment based on those submissions, which constitutes a claim of right." [92] at 6.

Plaintiff's position on this point suffers from a couple problems. First, the "undisputed" fact plaintiff identifies is not supported by any reference to the record. And a review of plaintiff's Local Rule 56.1 Statement of Fact uncovers no evidence concerning plaintiff submitting documentation to defendant. Instead, all of plaintiff's evidence focuses on defendant's knowledge of what it paid plaintiff.

Second, even if the summary judgment record did contain evidence that drivers submitted "shipment paperwork," which served as the basis for their compensation, it is not apparent that this conduct would amount to a claim of right to the funds beyond the required 70%. From the briefing, it does not sound as though the drivers would submit documents that said something like, "this is how much fuel I used, now give me 90% of fuel surcharge." Instead, it appears the drivers would submit proof that a job was complete and then wait to be compensated according to their agreement. As such, it is not clear that they ever

18

claimed a right to anything above the negotiated percentage of "gross." Because on plaintiff's motion for summary judgment it is his burden to show his entitlement to relief, his deficient evidentiary record and legal analysis requires that the motion be denied at this time.

One last note to help the parties moving forward: Defendant says the voluntary payment doctrine also does not apply to this case because defendant's counterclaim is for "money had and received," which is not mentioned in some of the leading cases on the doctrine. This argument fails because a claim for "money had and received" is simply another (and archaic) name for a restitution claim, to which the voluntary payment doctrine certainly applies. *See King*, 215 Ill.2d at 27–28 (discussing the two claims interchangeably).[6]

---

[6] Plaintiff moved to strike portions of defendant's Local Rule 56.1 responses and additional statements of fact. [93] Because plaintiff's summary judgment motion is denied for independent reasons, plaintiff's motion to strike is denied as moot.

## IV. Conclusion

Plaintiff's motion for class certification [50] is granted in part and denied in part. The court certifies a class defined as follows: All equipment owner-operators in the United States who, during the period from June 15, 2010 to the present, had or have owner-operator agreements that identify Altom Transport, Inc. as the carrier, hauled shipments pursuant to such agreements for which Altom collected payment for tank washes, and who did not object within 30 days of payment for such hauls to the exclusion of the tank-wash funds from "gross." Plaintiff's motion for summary judgment [33] is denied. Plaintiff's motion to strike [93] is denied.

ENTER:

                                            Manish S. Shah
                                            United States District Judge

Date: 9/24/15